IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
CAMDEN VICINAGE

| | |
|---|---|
| PAUL BEERHALTER, | : |
| Plaintiff, | : Civil No. 19-17561 (RBK) |
| v. | : **OPINION** |
| COMMISSIONER OF SOCIAL SECURITY, | : |
| Defendant. | : |

**KUGLER**, United States District Judge:

This matter comes before the Court upon Plaintiff Paul Beerhalter's appeal (Doc. 1) from the final decision of the Commissioner of Social Security ("the Commissioner") denying Plaintiff's claims for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act. For the reasons expressed herein, this case is REMANDED for further administrative proceedings consistent with this Opinion.

**I.    PROCEDURAL BACKGROUND**[1]

Plaintiff filed an application for DIB on June 20, 2017, alleging a disability onset date of March 28, 2014. (R. 25.) Plaintiff's DIB application was denied on December 11, 2017, and his subsequent request for reconsideration was denied on March 8, 2018. (R. 25, 118, 135.) On June

---

[1] Because the record is voluminous, the Court sets forth only those facts necessary for context and relevant to the issues upon appeal. The Court cites to the administrative record as "R." Background facts and medical history are set forth in a separate section below.

25, 2018, Plaintiff requested a hearing on his DIB claim before an Administrative Law Judge ("ALJ"). (R. 152.)

On March 28, 2019, ALJ John Campbell presided over a hearing on Plaintiff's DIB applications. (R. 44–93.) The ALJ issued an Unfavorable Decision on April 30, 2019, finding Plaintiff not disabled. (R. 22–43.) Plaintiff filed a Request for Review of Hearing Decision with the Appeals Council; this was denied on July 22, 2019, making the ALJ's April 30, 2019 decision the final decision of the Commissioner. (R. 1–7.) Plaintiff appeals this determination now.

## II.   LEGAL STANDARD

### A.  Sequential Evaluation Process

The Social Security Act defines disability as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Commissioner uses an established five-step evaluation process to determine whether a claimant is disabled. *See* 20 C.F.R. § 404.1520.

For the first four steps of the evaluation process, the claimant has the burden of establishing his disability by a preponderance of the evidence. *Zirnsak v. Colvin*, 777 F.3d 607, 611–12 (3d Cir. 2014). First, the claimant must show that he was not engaged in "substantial gainful activity" for the relevant time period.  20 C.F.R. § 404.1572. Second, the claimant must demonstrate that he has a "severe medically determinable physical and mental impairment" that lasted for a continuous period of at least twelve months. 20 C.F.R. § 404.1520(a)(4)(ii); 20 C.F.R. § 404.1509. Third, either the claimant shows that his condition was one of the Commissioner's listed impairments, and is therefore disabled and entitled to benefits, or the analysis proceeds to step four. 20 C.F.R. § 404.1420(a)(4)(iii). Fourth, if the condition is not equivalent to a listed

impairment, the ALJ must assess the claimant's residual functional capacity ("RFC"), and the claimant must show that he cannot perform his past work. 20 C.F.R. § 404.1520(a)(4)(iv); 20 C.F.R. § 404. 1520(e). If the claimant meets his burden, the burden shifts to the Commissioner for the last step. *Zirnsak*, 777 F.3d at 612. At the fifth and last step, the Commissioner must establish that other available work exists that the claimant can perform based on his RFC, age, education, and work experience. *Id.*; 20 C.F.R. § 404.1520 (a)(4)(v). If the claimant can make "an adjustment to other work," he is not disabled. *See* 20 C.F.R. § 404.1520(a)(4)(v).

### B. Review of the Commissioner's Decision

When reviewing the Commissioner's final decision, this Court is limited to determining whether the decision was supported by substantial evidence, after reviewing the administrative record as a whole. *Zirnsak*, 777 F.3d at 610 (citing 42 U.S.C. § 405(g)). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Morales v. Apfel*, 225 F.3d 310, 316 (3d Cir. 2000). Substantial evidence is "more than a mere scintilla but may be somewhat less than a preponderance of the evidence." *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005). Courts may not set aside the Commissioner's decision if it is supported by substantial evidence, even if the court "would have decided the factual inquiry differently." *Fargnoli v. Massanari*, 247 F.3d 34, 38 (3d Cir. 2001).

When reviewing a matter of this type, the Court must be wary of treating the determination of substantial evidence as a "self-executing formula for adjudication." *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983). The Court must set aside the Commissioner's decision if it did not take into account the entire record or failed to resolve an evidentiary conflict. *See* S*chonewolf v. Callahan*, 927 F. Supp. 277, 284–85 (D.N.J. 1997) (citing *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978)). Evidence is not substantial if "it really constitutes not evidence but mere

conclusion," or if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence." *Wallace v. Sec'y of Health & Human Servs.*, 722 F.2d 1150, 1153 (3d Cir. 1983) (citing *Kent*, 710 F.2d at 114). A district court's review of a final determination is a "qualitative exercise without which our review of social security disability cases ceases to be merely deferential and becomes instead a sham." *Kent*, 710 F.2d at 114.

### III.  FACTUAL BACKGROUND

Plaintiff was born on November 25, 1982, and was 31 years old on his alleged onset date of March 28, 2014. (R. 36.) From October 2002 to March 2014, Plaintiff was in the Air Force, primarily working as a satellite communications systems equipment technician. (R. 77, 344.) In November 2011, Plaintiff was injured during a combat training exercise: while attempting to pull a heavy weight, Plaintiff felt a "pop" in his back. (R. 59, 391.) After this incident, he had difficulty walking and standing, and has used a cane to ambulate ever since. (R. 59–68.) Plaintiff medically retired from the Air Force in March 2014 as a result of this injury. (R. 59.)

While in the Air Force, Plaintiff received two associate degrees from the Community College of the Air Force, one in Electronic Systems Technology and the other in Instructor of Military Science. (R. 54.) After leaving the Air Force, Plaintiff began working towards a bachelor's degree. (R. 54–55.) In 2016, when he was roughly two-thirds of the way through his program, Plaintiff left school reportedly due to back pain and the difficulty of keeping up with the workload as a single father. (R. 54–56.)

After Plaintiff left the Air Force, he lived with his wife and children in Georgia; Plaintiff and his wife later separated. Plaintiff and his children then lived for a time with his 20-year-old nephew, who assisted with childcare, cooking, and cleaning, and lived during a separate time with Plaintiff's father. (R. 55–56. 1091.) Plaintiff moved to New Jersey in 2017, where he currently

lives in an apartment with his two children—his six-year-old daughter and eleven-year-old son. (R. 55–56.) Plaintiff assists his children with daily activities and with preparing for school; however, he alleges that his son is instrumental in helping out, and he often relies on his son to cook and clean. (R. 61.) Plaintiff states that he leaves the house several times a week to go grocery shopping or to attend a VA appointment. (R. 68.) When at home, Plaintiff cleans the house to the extent he is physically able, watches television, and plays video games. (R. 68–72.) Plaintiff relies on a laundry service to wash, dry, and fold his family's clothes. (R. 70.) He reports being social with others while at the store, but notes that he is "socially awkward" and has had negative altercations with his neighbors as a result. (R. 68–72.)

### A. Medical History[2]

Plaintiff has a history of the following impairments: obesity; hereditary hemochromatosis; fatty liver; sleep apnea; hyperlipidemia; hepatomegaly; moderate recurrent depression; generalized anxiety disorder; somatic symptom disorder; degenerative changes of the lumbar spine at L4-S1 status post left laminectomy and microdiscectomy; bipolar II disorder; anxiety disorder; and obsessive compulsive disorder. (Doc. 11 ("Pl. Br.") at 9.)

In October 2012, as a result of his Air Force-related back injury, Plaintiff underwent a left L5-S1 laminectomy, facetectomy, and discectomy surgery. (R. 381–412.) Following surgery, Plaintiff was given a permanent 40-pound lifting restriction. (R. 381.)

Beginning in April 2014, Plaintiff saw various doctors at the Veterans Affairs Medical Center ("VAMC") in Augusta, Georgia for his physical and mental health issues. At the VAMC, Plaintiff underwent regular psychotherapy sessions with Dr. Christopher Slaughter, who diagnosed Plaintiff with major depressive disorder and noted that he had chronic pain syndrome. (R. 413–

---

[2] A number of medical opinions and treatment records are contained in the administrative record. The Court relays here only those relevant to Plaintiff's current appeal.

493; 870–956.) Dr. Slaughter authored a report dated October 8, 2014, in which he opined that Plaintiff's "severe depression and medical complications are of such severity that he cannot maintain substantial gainful employment at the present time and for the foreseeable future." (R. 1826.)

On November 13, 2014, at the referral of the Georgia Department of Labor, Plaintiff saw Dr. Adrienne Davis for a mental status examination. (R. 495.) Dr. Davis authored her psychological evaluation report on December 10, 2014. (R. 495–500.) She found that Plaintiff was above average intellectually, but presented as tense and depressed. (R. 498.) She diagnosed Plaintiff with depressive disorder secondary to medical condition, and found that he was moderately to severely impaired in his ability to relate to others and to maintain attention, and severely impaired in his ability to withstand the stresses of a work environment. (R. 499–500.) However, she found that Plaintiff does have the mental ability to follow through on simple tasks and instructions. (R. 500.)

On December 9, 2014, Dr. Lamar Peacock examined Plaintiff and authored a Comprehensive Medical Disability Evaluation. (R. 501.) He found that Plaintiff had "significant ongoing chronic pain issues" and a history of major depression. (R. 502.)

In addition to visiting with Dr. Slaughter at the Augusta VAMC, Plaintiff also regularly saw other therapists and doctors there up through 2017. (R. 509–645.) These treatment notes generally comport with the diagnosis of chronic pain syndrome from Plaintiff's back injury, trouble walking without a cane, depression, and suicidal ideation. (*See, e.g.,* R. 515, 523, 536, 545, 553, 575, 738, 761, 1087. 1099.) Plaintiff was also diagnosed with bipolar disorder, type II. (R. 529.) Plaintiff's primary care provider, Dr. Christy Thomas, also noted these issues throughout treatment records from 2014 and 2015. (R. 600–645.)

In June 2017, VAMC notes indicate that Plaintiff's suicidal ideation increased. (R. 661.) His father-in-law took Plaintiff's gun as a precaution, and his nephew took physical possession of his medication. (R. 661.) Plaintiff presented to the emergency department in June 2017 for strong suicidal ideation after he came close to hanging himself; he was hospitalized for several days as a result. (R. 672–673, 1019.) Plaintiff appeared to have improved somewhat afterwards, though VAMC treatment records indicate continued depression. (R. 1087, 1099.)

On November 3, 2017, state agency consultant Dr. Frank Gonzales completed a Psychiatric Review Technique and Mental Residual Functional Capacity assessment. (R. 111–118.) Dr. Gonzales noted that Plaintiff had degenerative disc disorder, depressive and bipolar disorders, and anxiety and OCD. (R. 111.) He assigned moderate limitations to Plaintiff's ability to carry out detailed instructions and to maintain attention and concentration for extended periods, but found no significant limitations in Plaintiff's ability to carry out simple instructions, adhere to a schedule, be punctual, sustain an ordinary routine, work in coordination with others, or to complete a normal workday. (R. 116.) Dr. Gonzales' findings were affirmed on reconsideration by Dr. Jocelyn Fierstein. (R. 129.)

On November 16, 2017, Plaintiff saw Dr. Ronald Karpf for an evaluation. (R. 1303.) Dr. Karpf completed a Clinical Psychological Disability Examination report, dated November 17, 2017. (R. 1303–1306.) Dr. Karpf noted that Plaintiff's intelligence was above average, his attitude was cooperative and he was able to focus on the topic of conversation, but also noted that Plaintiff felt hopeless and worthless, and was experiencing suicidal ideation. (R. 1305–1306.) Dr. Karpf found that Plaintiff's emotional problems were moderate to severe, and diagnosed him with "major depressive disorder, recurrent, severe, in partial remission" and generalized anxiety disorder. (R. 1306.)

7

On November 24, 2017, Plaintiff underwent an examination from Dr. Samuel Sarmiento, a consultative examiner. (R. 1307–1312.) Dr. Sarmiento's report contained mostly normal physical findings, aside from decreased sensation in the left leg, lumbar tenderness, and decreased range of motion in the lumbosacral spine. (R. 1310.) Dr. Sarmiento opined that Plaintiff was not limited in his abilities to walk, stand, or sit with reasonable breaks. (R. 1312.)

On December 8, 2017, Dr. Cirilo Encarnacion authored a Residual Functional Capacity assessment in which he found that Plaintiff could lift and/or carry 20 pounds occasionally and 10 pounds frequently, and could stand, walk, and/or sit for six out of eight hours. (R. 113–115.) Dr. Encarnacion's findings were affirmed by Dr. Mohammed Rizwan on reconsideration. (R. 131.)

A series of x-rays conducted on December 12, 2017 showed degenerative changes in the spine at L4-S1, and degenerative changes in the lumbar spine at L4-5 and L5-S1 with marked disc space narrowing and disc desiccation. (R. 1323.) In 2018, Plaintiff began seeing a new primary care provider, Dr. Scott Dorfner, who noted during examinations in March, June, and September of 2018 that Plaintiff had herpes zoster, anxiety, reactive depression, S/P lumbar discectomy, mixed hyperlipidemia, degenerative disc disease, vitamin D deficiency, fatty liver, and chronic back pain. (R. 1324–1336.)

After moving to New Jersey, Plaintiff began regularly visiting the VAMC in Philadelphia, Pennsylvania beginning in September 2017. (R. 1338–1492.) The doctors and staff at the Philadelphia VAMC similarly diagnosed Plaintiff with depression and anxiety, as well as insomnia and suicidal ideation on several occasions. (R. 1351, 1358, 1412, 1517.)

### B. The ALJ's Decision

After holding a hearing during which Plaintiff and a Vocational Expert ("VE") gave testimony, the ALJ issued his decision. (R. 22–43.) At step one, the ALJ found that Plaintiff had

8

not engaged in substantial gainful activity since his alleged onset date of March 28, 2014. (R. 28.) At step two, the ALJ found that Plaintiff has the following severe impairments: obesity; hereditary hemochromatosis; fatty liver; sleep apnea; hyperlipidemia; hepatomegaly; moderate recurrent depression; generalized anxiety disorder; somatic symptom disorder; degenerative changes of the lumbar spine at L4-S1 status post left laminectomy and microdiscectomy; bipolar II disorder; anxiety disorder; and obsessive compulsive disorder ("OCD"). (R. 28.) He also found Plaintiff to have "non-severe impairments of sprain of the coastal cartilage," "eyelid operation," and "herpes zoster without complication," but found that these impairments did not have more than a minimal impact on Plaintiff's ability to work. (R. 28.)

At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal the severity of any listed impairment. (R. 28.) He noted that Plaintiff has a mild limitation in understanding, remembering or applying information; a mild limitation in interacting with others; a moderate limitation with regard to concentrating, persisting, or maintaining pace; and a moderate limitation in adapting or managing oneself. (R. 28–29.) The ALJ then formulated Plaintiff's RFC, finding that:

> The [Plaintiff] has the residual functional capacity to perform less than the full range of sedentary work as defined in 20 CFR 404,1567(a). More specifically, [Plaintiff] can lift and/or carry up to 10 pounds maximum, push and/or pull up to 10 pounds frequently, sit for up to six hours in an eight-hour workday, and stand and/or walk for up to two hours in an eight-hour workday. He can occasionally balance, crouch, crawl, kneel, stoop, and climb stairs and ramps, but can never climb ladders, ropes, and scaffolds. [Plaintiff] requires the use of a cane to ambulate and must avoid concentrated exposure to the extreme heat, humidity, and hazards such as exposed moving mechanical parts, dangerous machinery, and unprotected heights. Also, [Plaintiff] is capable of working in environments up to and including a moderate noise intensity level. Furthermore, [Plaintiff] must be able to shift position every one hour for five minutes while remaining on task. Psychiatrically, [Plaintiff] is able to carry out simple instructions, perform simple repetitive tasks, make simple decisions in the workplace, and is able to frequently interact with supervisors and occasionally with coworkers and the public.

9

(R. 29.)

In formulating this RFC, the ALJ considered medical opinion evidence from a number of doctors and facilities. He found the "opinions of Dr. Gonzales and Dr. Fierstien to be persuasive since they found [Plaintiff] has significant mental limitations, but not to the extent it was disabling." (R. 35.) He found their opinions were supported by "VAMC treatment records that repeatedly showed a constricted and depressed mood and affect and some deficits in concentration." (R. 35.)

Although noting that Dr. Sarmiento's opinion was "broad, vague, and does not offer a specific function by function assessment," he nonetheless gave the opinion "substantial merit in determining [Plaintiff] was not physically disabled." (R. 35.) The ALJ found the opinions of Dr. Encarnacion and Dr. Rizwan "to be less persuasive since it understates [Plaintiff's] exertional capabilities." (R. 35.) He stated that "they did not find [Plaintiff] has any postural limitations, which is inconsistent with his long history of low back pain." (R. 35.)

The ALJ found Dr. Davis' December 2014 opinion to be persuasive "because she was able to personally examine [Plaintiff] and her mental status examination of [Plaintiff] was consistent with the extensive treatment records seen at the VAMC dating back to 2014." (R. 35.) He noted that, "[d]espite examining [Plaintiff] just once, Dr. Davis accurately captured [Plaintiff's] mental functioning that was representative of the applicable period of adjudication." (R. 35.)

In contrast, the ALJ found that Dr. Slaughter's October 2014 opinion "is not persuasive because it was written four and [a] half years ago, which means it did not cover most of the applicable period of adjudication." (R. 35.) He added, "a review of [Plaintiff's] subsequent VAMC treatment records as well as the consultative examinations do not support a finding of physical or mental disability. Thus, Dr. Slaughter's opinion of disability is attributed little merit." (R. 35–36.)

Finally, the ALJ stated that "[a]ll statements of disability or impairment submitted by the VAMC is not persuasive." (R. 36.) The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record." (R. 34.)

At step four, the ALJ found that Plaintiff is unable to perform his past relevant work as an electronics mechanic. (R. 36.) At step five, noting that Plaintiff is a younger individual with at least a high school education, the ALJ found that "there are jobs that exist in significant numbers in the national economy that [Plaintiff] can perform." (R. 36.) Considering the VE's testimony, the ALJ found that Plaintiff could fill occupations such as final assembler of optical goods, lens inserter, and compact assembler (jewelry), all of which are unskilled jobs requiring sedentary physical exertion. (R. 37.) Accordingly, the ALJ found that Plaintiff was not disabled. (R. 37.)

## IV. DISCUSSION

On appeal, Plaintiff makes the following arguments: (1) the ALJ erred in his evaluation of the medical opinion evidence in the record; (2) the ALJ erred in formulating the RFC, as it does not include all the limitations the ALJ found; (3) the ALJ erred in failing to consider the VE's testimony, which would preclude work based on the formulated RFC; and (4) the ALJ failed to consider Plaintiff's subjective complaints.

### A. Whether the ALJ erred in evaluating the medical opinion evidence

Plaintiff argues that the ALJ erred in evaluating the medical opinion evidence in two respects: first, he argues that the ALJ improperly rejected Dr. Slaughter's October 8, 2014 opinion. Second, he argues that the ALJ failed to include any discussion of the weight, if any, he assigned

11

to Dr. Karpf's November 16, 2017 opinion. He contends that the ALJ's failure to properly consider these two opinions resulted in an incorrect RFC.

### *Dr. Slaughter*

Plaintiff argues that the ALJ improperly dismissed Dr. Slaughter's October 8, 2014 opinion based on its age, rather than addressing the substance of the opinion. (Pl. Br. at 20.) Plaintiff contends that, by rejecting this opinion based on its age, the ALJ's decision is contradictory: the ALJ found Dr. Davis's December 10, 2014 opinion to be persuasive, despite the fact that it was only two months more recent than Dr. Slaughter's opinion. (Pl. Br. at 21.) In response, Defendant argues that, in addition to finding that it was dated, the ALJ also found Dr. Slaughter's opinion inconsistent with later evidence in the record. (Doc. 14 ("Def. Br.") at 19.) Defendant further argues that, although Dr. Slaughter was a treating physician, he was not automatically entitled to greater weight, as the "treating physician rule" does not apply to claims filed after March 27, 2017. (Def. Br. at 18.)

Defendant is correct that 20 C.F.R. § 404.1520c, rather than 20 C.F.R. § 404.1527, applies here. Significantly, this means that "[t]he regulations in effect at the time of the ALJ's decision provide that an ALJ will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion. Rather the ALJ will consider a medical opinion using certain factors, including whether the opinion is supported by objective medical evidence and explanations, and whether the opinion is consistent with the evidence from other medical sources and nonmedical sources." *Jackson v. Saul*, Civ. No. 18-4374, 2019 WL 4058997, at *5 (E.D. Pa. Aug. 27, 2019) (citing 20 C.F.R. § 404.1520c(a)-(c)). However, while the ALJ is not required to assign a particular weight to an opinion, he must still consider factors such as "length of the treatment relationship, frequency of examinations, purpose of the treatment relationship, extent of

the treatment relationship, examining relationship, and specialization." *Id*. It is not clear that he did so here.

The ALJ found that Dr. Slaughter's October 2014 opinion "is not persuasive because it was written four and [a] half years ago, which means it does not cover most of the applicable period of adjudication . . . moreover, a review of [Plaintiff's] subsequent VAMC treatment records as well as the consultative examinations do not support a finding of physical or mental disability." (R. 35–36.) The mental consultative examination the ALJ references was performed by Dr. Davis. He noted that Dr. Davis' opinion "is persuasive because she was able to personally examine [Plaintiff] and her mental status examination of [Plaintiff] was consistent with the extensive treatment records seen at the VAMC dating back to 2014. Despite examining [Plaintiff] just once, Dr. Davis accurately captured [Plaintiff's] mental functioning that was representative of the applicable period of adjudication." (R. 35.) The ALJ also noted that "[a]ll statements of disability or impairment submitted by the VAMC is not persuasive." (R. 36.)

The Court finds several issues present in the above analysis. First, the ALJ rejected Dr. Slaughter's opinion primarily because of its age, yet oddly found Dr. Davis' opinion from only two months later to be persuasive. Further, Dr. Davis' opinion was based on her examination of Plaintiff in November 2014, only one month after Dr. Slaughter—who had seen Plaintiff regularly for months—authored his opinion. "While the ALJ retains the discretion to ultimately determine the weight placed on a physician's opinion, the ALJ must provide an adequate explanation" when assigning weight. *Bowers v. Saul*, Civ. No. 19-17386, 2020 WL 4435405, at *8 (D.N.J. Aug. 3, 2020). The ALJ's rejection of Dr. Slaughter's opinion based on age clearly contradicts his wholesale adoption of Dr. Davis' opinion from the same time period.

Next, the Court agrees with Plaintiff that, although the ALJ was not explicitly required to assign any particular weight to Dr. Slaughter's opinion, it was improper to reject the opinion based on its age, without considering the factors contained in 20 C.F.R. § 404.1520c. *See Heise v. Astrue*, Civ. No. 09-5455, 2010 WL 3086445, at *9 (D.N.J. Aug. 2, 2010) (finding that the ALJ's decision was not supported by substantial evidence because he afforded little weight to medical opinions solely on the basis of their age, without considering the substance of the opinions). Although the ALJ explicitly considers the 20 C.F.R. § 404.1520c factors in regards to other medical opinions elsewhere in his decision, there is no indication that he considered these factors in relation to Dr. Slaughter's opinion. He notably failed to consider factors such as "length of the treatment relationship," "frequency of examinations," and "examining relationships." 20 C.F.R. § 404.1520c(c)(3).

Although the ALJ seems to address the "consistency" factor with his statement that subsequent records from the VAMC and Dr. Davis did not support a finding of disability, the single, conclusory sentence the ALJ provides fails to address conflicting evidence in the record. As noted above, the ALJ's reliance on Dr. Davis' opinion is contradictory, given that it is subject to the same age issue that caused the ALJ to reject Dr. Slaughter's opinion. As to the VAMC, the ALJ stated that he did not find the VAMC's opinion statements to be persuasive, and instead relied on VAMC treatment notes. (R. 36.) However, the VAMC treatment notes seem to support, rather than contradict, Dr. Slaughter's opinion. For example, they record Plaintiff's hospitalization for strong suicidal ideation in June 2017. (R. 1569.) While the ALJ notes that the hospitalization was an "isolated incident," he elsewhere acknowledges that VAMC treatment notes consistently describe Plaintiff's mental state as depressed. (R. 30–34.) The VAMC treatment notes also clearly

indicate that Plaintiff still experienced suicidal ideation in November 2017 and October 2018, well after his hospitalization. (R. 1516–1518, 1603.)

Because the VAMC notes document Plaintiff's depression, ongoing suicidal ideation, and hospitalization for suicidal ideation, it is unclear how the VAMC record serves as a basis for rejecting Dr. Slaughter's opinion. Remand is therefore appropriate, so that the ALJ can address the conflicting evidence in the record. *See Fargnoli v. Massanari,* 247 F.3d 34, 42 (3d Cir. 2001) ("Where there is conflicting probative evidence in the record, we recognize a particularly acute need for an explanation of the reasoning behind the ALJ's conclusions, and will vacate or remand a case where such an explanation is not provided.").

### *Dr. Karpf*

Plaintiff next argues that the ALJ failed to consider Dr. Karpf's November 16, 2017 opinion. (Pl. Br. at 22.) Plaintiff argues that Dr. Karpf's opinion, which notes that Plaintiff has suicidal ideation, moderate to severe emotional problems, and major depressive disorder, contradicts the ALJ's finding that Plaintiff's mental status exams after June 2017 reflected good mental functioning. (Pl. Br. at 22.) In response, Defendant argues that, although the ALJ did not explicitly assign a weight to Dr. Karpf's opinion, the fact that the ALJ summarized the opinion earlier in his decision indicates that he considered it. (Def. Br. at 20.)

In assigning weight to medical evidence, "[t]he ALJ's explanation must be sufficient enough to permit the court to conduct a meaningful review." *Moore v. Comm'r of Soc. Sec.*, Civ. No. 11-3611, 2012 WL 2958243, at *2 (D.N.J. July 19, 2012) (citing *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 119-20 (3d Cir. 2000)). In situations where the ALJ fails to state what, if any, weight he assigns to a particular piece of evidence, it is obviously difficult for a court to conduct

15

a meaningful review. This is particularly crucial here, where the opinion in question contradicts the ALJ's ultimate findings.

In classifying Plaintiff's four-day hospitalization for suicidal ideation in June 2017 as an "isolated incident," the ALJ found it significant that Plaintiff's "subsequent treatment notes for the remainder of 2017, all of 2018, and the first three months of 2019 showed good mental status exams and no further instances of suicidal ideation or psychiatric hospitalizations." (R. 33–34.) This assertion directly supports the ALJ's finding that Plaintiff's mental impairments were not severe enough to be disabling. (R. 34.) However, in addition to being contradicted by the VAMC treatment notes mentioned above, this finding is clearly contradicted by Dr. Karpf's November 2017 opinion—completed *after* Plaintiff's hospitalization—which stated that Plaintiff still suffered from suicidal ideation and major depressive disorder. (R. 1303–1306.)

"Where a conflict in the evidence exists, the ALJ may choose whom to credit but 'cannot reject evidence for no reason or the wrong reason.'" *Plummer v. Apfel*, 186 F.3d 422, 429 (3d Cir. 1999) (quoting *Mason v. Shalala*, 994 F.2d 1058, 1066 (3d Cir. 1993)). Here, the ALJ has provided no reason for his apparent rejection of Dr. Karpf's opinion. In weighing the opinion evidence, the ALJ noted that he found the opinions of Dr. Gonzales and Dr. Fierstien to be persuasive in indicating that Plaintiff "has significant mental limitations, but not to the extent it was disabling." (R. 35.) If the ALJ chose to credit these opinions and reject Dr. Karpf's contradictory opinion, he may do so, as an ALJ's role is to "weigh the credibility of the evidence"—however, he cannot do so without sufficiently addressing the conflicting evidence in the record. *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000) (finding remand appropriate where the ALJ "failed to mention or refute some of the contradictory medical evidence before him").

The Court accordingly rejects Defendant's contention that, because the ALJ summarized Dr. Karpf's opinion in an earlier section, it necessarily indicates that he considered it. "[A]n ALJ 'may not reject pertinent or probative evidence without explanation.'" *Jackson v. Saul*, Civ. No. 18-4374, 2019 WL 4058997, at *8 (E.D. Pa. Aug. 27, 2019) (citing *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 204 (3d Cir. 2008)). "'In the absence of such an indication, the reviewing court cannot tell if significant probative evidence was not credited or simply ignored.'" *Id.* (quoting *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981)).

Because the ALJ failed to explain what weight he assigned to Dr. Karpf's opinion and failed to address the contradictory evidence within it, his findings regarding Plaintiff's mental health are not supported by substantial evidence. *Fargnoli,* 247 F.3d at 42; *see also Sabol v. Comm'r of Soc. Sec.*, Civ. No. 15-3036, 2016 WL 3090632, at *2 (D.N.J. May 31, 2016) (noting that, "'where there is conflicting evidence, the ALJ must explain which evidence he accepts and which he rejects, and the reasons for that determination,'" and remanding with the instruction that "the ALJ should explain how she arrived at her determinations and specifically provide her reasoning" (quoting *Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007)).

## V.     CONCLUSION

Based on the foregoing, the Court finds the ALJ's determination that Plaintiff is not disabled is not supported by substantial evidence. Because the ALJ may potentially construct a different RFC when considering the medical opinion evidence upon remand, the Court declines to address Plaintiff's remaining arguments. Accordingly, this case is REMANDED for further administrative proceedings consistent with this Opinion. An accompanying Order shall issue.

Dated:      8/18/2020                                       /s Robert B. Kugler
                                                            ROBERT B. KUGLER
                                                            United States District Judge